IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| RAMON BONILLA-GALEAS,<br><br>        Petitioner,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | Criminal No. 13-00765 HG-2<br>Civil No. 16-00440 HG-RLP |

**ORDER DENYING PETITIONER RAMON BONILLA-GALEAS'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. § 2255 (ECF No. 137)**

On August 8, 2016, Petitioner Ramon Bonilla-Galeas filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255.  (ECF No. 137).  Petitioner argues that his attorneys provided ineffective assistance of counsel during the change of plea, sentencing, and appellate phases of the case. Petitioner also challenges the duration of his sentence.

Petitioner's Motion to Vacate, Set Aside or Correct Sentence, pursuant to Title 28 U.S.C. § 2255 (ECF No. 137), is **DENIED.**

Petitioner is not entitled to an evidentiary hearing because his claims do not provide grounds for relief.

Petitioner is not entitled to a certificate of appealability

because he has not made a substantial showing of the denial of a constitutional right.

## BACKGROUND

**The United States' Indictment**

On August 1, 2013, the United States filed a four-count Indictment as to Petitioner Ramon Bonilla-Galeas ("Petitioner") and a co-defendant.  Petitioner was charged as follows:

**Count 1** - conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 21 U.S.C. § 846.

**Count 4** - possession with intent to distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2.

Counts 2 and 3 of the Indictment did not name Petitioner. (ECF No. 10).

**Attorney Mario Rodriguez' Representation of Petitioner**

On March 18, 2014, Petitioner's court-appointed attorney filed a Motion to Withdraw as Counsel.  (ECF No. 47).  On the same date, the Magistrate Judge held a hearing concerning the motion to withdraw.  At the hearing, Petitioner indicated that he wished to hire a private attorney of his choosing.  The

Magistrate Judge granted the court-appointed attorney's motion to withdraw and instructed Petitioner to retain new counsel.  (ECF No. 49).

On May 1, 2014, Attorney Mario Rodriguez ("Attorney Rodriguez") appeared *pro hac vice* on behalf of Petitioner. Alan Okamoto appeared as local counsel.   (ECF No. 61).

**Petitioner's Guilty Plea**

On September 29, 2014, Petitioner entered into a plea agreement with the United States.  (Agmt., ECF No. 72).  The plea agreement contained an appeal waiver, as well as a collateral attack waiver.  (Id. at pp. 7-8).  The collateral attack waiver precludes Petitioner from challenging his sentence or the manner in which it was determined, unless the Court imposed a sentence greater than specified in the applicable sentencing guidelines or Petitioner alleges ineffective assistance of counsel.  (Id.)

On the same date, September 29, 2014, Petitioner appeared before the Magistrate Judge and pled guilty as to Count 1 of the Indictment, concerning conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine.  At the hearing, the Government indicated that Count 4 was to be dismissed at sentencing.  (ECF No. 70).

**Attorney Hironaka's Appointment to Represent Petitioner**

On April 8, 2015, the Court held a sentencing hearing as to Petitioner.  At the hearing, Attorney Rodriguez requested to

withdraw as counsel for Petitioner.  The Court granted the request and continued the sentencing hearing.  (ECF No. 113).

On April 9, 2015, Attorney Randall K. Hironaka ("Attorney Hironaka") was appointed to represent Petitioner.  (ECF No. 89).

**Petitioner's Sentencing**

On June 26, 2015, Attorney Hironaka filed an amended sentencing statement on behalf of Petitioner.  (ECF No. 92).  The sentencing statement argued, in part, that Petitioner qualified for a below-mandatory-minimum sentence pursuant to the "safety valve" provision of 18 U.S.C § 3553(f).  (Sentencing Statement at pp. 5-7).

On July 2, 2015, the Court held the final sentencing hearing as to Petitioner.  At the hearing, Attorney Hironaka argued that Petitioner qualified for the safety valve provision.  (Sentencing Hearing Transcript at pp. 3-6, ECF No. 126).  The Court found Petitioner to be ineligible for application of the safety valve provision.  (Id. at p. 8).  The Court granted the Government's motion to dismiss Count 4 of the Indictment.  Petitioner was sentenced to the mandatory minimum sentence of ten years imprisonment and five years supervised release.  (ECF No. 93).

**Attorney Verna Wefald's Representation of Petitioner**

On July 9, 2015, Judgment was entered as to Petitioner. (ECF No. 98).  On the same date, Attorney Hironaka filed a motion to withdraw as counsel.  (ECF No. 94).  Attorney Hironaka

4

requested that the Court appoint appellate counsel for Petitioner, who wished to file a notice of appeal. (Atty. Hironaka Decl. at p. 2, ECF No. 94-1).

On July 17, 2015, Attorney Verna Wefald ("Attorney Wefald") was appointed to represent Petitioner in appellate proceedings. (ECF No. 109).

On July 19, 2015, Attorney Wefald filed a notice of appeal on behalf of Petitioner. (ECF no. 105).

On December 18, 2015, Attorney Wefald filed a motion, in which she requested to withdraw as counsel pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). (9th Cir. Dkt. No. 6). Attorney Wedfald stated that she was unable to discover any meritorious, non-frivolous issues on appeal. (<u>Id.</u>)

On January 29, 2016, the Ninth Circuit Court of Appeals filed an order permitting Petitioner to file a *pro se* supplemental opening brief that raises any issues in his case. (9th Cir. Dkt. No. 12). Petitioner did not file a supplemental opening brief.

On July 12, 2016, the Ninth Circuit Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion. The appellate court remanded the case to the district court to correct the Judgment to reflect that counts 2, 3, and 4 of the Indictment were dismissed as to Petitioner. (ECF No. 135).

**Petitioner's Habeas Corpus Motion**

On August 8, 2016, Petitioner timely filed a MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY ("2255 Motion"). (ECF No. 137).

On August 11, 2016, the United States requested additional time to respond to Petitioner's 2255 Motion. (ECF No. 138). On the same date, the United States filed a request for the Court to find that Petitioner waived his attorney-client privilege as to Attorneys Rodriguez, Hironaka, and Wefald. (ECF No. 139).

On August 11, 2016, the Court filed an Amended Judgment pursuant to the Ninth Circuit Court of Appeals's July 12, 2016 order. (ECF No. 140).

On August 12, 2016, the Court found that Petitioner waived his attorney-client privilege as to Attorneys Rodriguez, Hironaka, and Wefald. (ECF No. 142). The Court also granted the United States' request for additional time, and ordered that its Opposition to Petitioner's 2255 Motion be filed by November 14, 2016. (ECF No. 143).

On November 14, 2016, the United States filed RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY. (ECF No. 146).

Petitioner did not file a Reply.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255, provides federal prisoners with a right of action to challenge a sentence if it was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A prisoner may file a motion ("2255 Motion") to vacate, set aside, or correct a sentence. 28 U.S.C. § 2255.

The scope of collateral attack of a sentence is limited, and does not encompass all claimed errors in conviction and sentencing.

Courts do not hold *pro se* petitioner submissions to the same standard as filings submitted by counsel. Corjasso v. Ayers, 278 F.3d 874, 878 (9th Cir. 2002), as amended on denial of reh'g (Feb. 8, 2002). *Pro se* submissions are liberally construed "to afford the petitioner the benefit of any doubt." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985)) (internal quotations omitted).

## ANALYSIS

Petitioner Ramon Bonilla-Galeas' ("Petitioner") Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255 ("2255 Motion") challenges his sentence. (ECF No. 137). Petitioner asserts that Attorneys Mario Rodriguez ("Attorney

Rodriguez"), Randall K. Hironaka ("Attorney Hironaka"), and Verna Wefald ("Attorney Wefald") provided ineffective assistance of counsel.  Attorney Rodriguez represented Petitioner when he pled guilty as to the Indictment.  Attorney Hironaka served as counsel for Petitioner when Petitioner was sentenced.  Attorney Wefald served as appellate counsel for Petitioner.

## I.   PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A. Petitioner's Claims Against Attorney Rodriguez

Petitioner appears to bring three allegations of ineffective assistance of counsel against Attorney Rodriguez.  According to Petitioner, Attorney Rodriguez allegedly (1) refused to meet him to discuss the case and the contents of the plea agreement Petitioner subsequently signed; (2) made the decision for Petitioner to plead guilty without protecting him from deportation or reviewing the evidence; and (3) precluded Petitioner from meeting with a probation officer during the preparation of the Presentence Investigation Report.

Ineffective assistance of counsel claims are analyzed under the two-part framework set forth in Strickland v. Washington, 466 U.S. 668 (1984).  A petitioner asserting an ineffective assistance allegation must demonstrate that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the

proceeding would have been different.  Id. at 687-88.  Counsel are presumed to have "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.

The conjunctive nature of the Strickland framework permits the Court to address the second factor first, especially if the petitioner suffered no prejudice as a result of the alleged performance deficiency.  Id. at 697.  Where, as here, the petitioner is challenging the performance of his counsel during the change of plea phase of the case, the Ninth Circuit Court of Appeals has stated that the prejudice prong of the Strickland framework requires the petitioner to show that but for the attorney's errors, he would have insisted on proceeding to trial instead of pleading guilty.  Doe v. Woodford, 508 F.3d 563, 568 (9th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

### 1. Petitioner Met with Attorney Rodriguez on Multiple Occasions to Discuss the Case

Petitioner claims Attorney Rodriguez failed to meet and confer with him to discuss the case or the plea agreement.

The Ninth Circuit Court of Appeals has held that "adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant."  Correll v. Ryan, 539 F.3d 938, 943 (9th Cir. 2008) (quoting United States v. Tucker, 716 F.2d 576, 581 (9th Cir. 1983)).  The answer to what

9

is an adequate consultation depends on the facts of each case, but the general guideline is that the attorney should have consultations sufficient to give the client an understanding of the legally relevant information that the defense possesses. Tucker, 716 F.2d at 581-82.

Attorney Rodriguez attests that he visited Petitioner at the Federal Detention Center in Honolulu on six separate occasions. Specifically, Attorney Rodriguez met with Petitioner on May 5, 2014; May 10, 2014; June 30, 2014; July 2, 2014; July 11, 2014; and September 27, 2014. (Atty. Rodriguez Decl. at ¶ 5, ECF No. 146-4.  In each instance, Attorney Rodriguez, who is fluent in Petitioner's native language of Spanish, states he met with Petitioner for at least two hours.  (Atty. Rodriguez Decl. at ¶ 5).  At the meetings, there was discussion of the evidence, defenses available to Petitioner, and the plea agreement. (Id.)

Attorney Rodriguez' representations concerning his communications with Petitioner are supported by the record.

On September 29, 2014, Petitioner initialed and signed a plea agreement presented by the United States.  The signed plea agreement specifically stated that Petitioner agreed Attorney Rodriguez apprised him of the charges he faced and the rights he waived by entering into a plea agreement. (Plea Agmt. at ¶¶ 2-3; 15, ECF No. 72).

On the same date, September 29, 2014, that Petitioner signed

10

the plea agreement Petitioner appeared before the Magistrate

Judge at a Change of Plea hearing.  (ECF No. 70).  At the

hearing, the Magistrate Judge inquired as to the scope of

Petitioner's discussions with Attorney Rodriguez:

    THE COURT: Have you discussed the charges and all of
the facts surrounding the charges with your attorneys?

    THE DEFENDANT: (Through interpreter) Yes.

    THE COURT: Are you satisfied with the legal
representation that you've received from your attorneys
in this case?

    THE DEFENDANT: (Through interpreter) Yes.

    THE COURT: Mr. Rodriguez, is the defendant's guilty
plea before the Court today pursuant to your advice and
recommendation?

    MR. RODRIGUEZ: Yes.

    THE COURT: Mr. Bonilla-Galeas, I have before me a
written plea agreement. Is this your signature on the
last page?

    THE DEFENDANT: (Through interpreter) Yes.

    THE COURT: And are these your initials on the first
page?

    THE DEFENDANT: (Through interpreter) Yes.

    THE COURT: Did you have an opportunity to read and
discuss the plea agreement with your lawyer before you
signed it?

    THE DEFENDANT: (Through interpreter) Yes.

    THE COURT: Do you understand the terms of the plea
agreement?

    THE DEFENDANT: (Through interpreter) Yes.

    THE COURT: Does the plea agreement cover every aspect

of the agreement that you have with the government in
this case?

THE DEFENDANT: (Through interpreter) I'm sorry?

THE COURT: Does the plea agreement cover every aspect
of the agreement that you have with the government?

THE DEFENDANT: (Through interpreter) Yes.
. . .
THE COURT: The United States Sentencing Commission
has issued guidelines for judges to use in determining
the sentence in a criminal case. While judges are not
bound to apply the guidelines, judges must consult the
guidelines and take them into account in determining a
sentence. Have you and your attorneys talked about how
the guidelines might apply to your case?

THE DEFENDANT: (Through interpreter) Yes.

(Change of Plea Hearing Transcript at pp. 5-7; 12, ECF No. 125).

The sworn declaration produced by Attorney Rodriguez,

Petitioner's own statements to the Court, and the plea agreement

Petitioner signed all establish that Attorney Rodriguez did in

fact discuss the case with Petitioner.  A review of the record

shows no issues associated with Attorney Rodriguez' understanding

of the case.  Attorney Rodriguez' conduct as to his

communications with Petitioner was objectively reasonable.

United States v. Mejia-Aviles, No. 1:10-CR-00436-LJO, 2012 WL

293175, at *2 (E.D. Cal. Jan. 31, 2012) (citing Kimmelman v.

Morrison, 477 U.S. 365, 381 (1986)).

Even if Petitioner could establish that Attorney Rodriguez'

efforts to confer with him were deficient, Petitioner fails to

show what benefit additional discussions would have afforded him.

See Payton v. Woodford, 258 F.3d 905, 922 (9th Cir. 2001)
(overruled on other grounds by Payton v. Woodford, 299 F.3d 815
(9th Cir. 2002) (holding that although the petitioner complained
that his trial counsel conferred with him for only 8.1 hours, no
prejudice was shown, as the petitioner "point[ed] to nothing that
would have happened differently had [counsel] and he spent more
time together").  Petitioner has failed to demonstrate that
additional consultations would have spurred him to proceed to
trial instead of pleading guilty.  See Doe, 508 F.3d at 568
(holding that the prejudice prong in guilty plea cases requires
the petitioner to show that he would have insisted on going to
trial instead of pleading guilty).

### 2. Petitioner Entered a Valid Guilty Plea as to Count 1 of the Indictment

Petitioner appears to argue that his guilty plea was
invalid, as Attorney Rodriguez advised him to enter a guilty plea
without ensuring that he would not be subject to removal
proceedings.

The Ninth Circuit Court of Appeals has instructed that where
a petitioner asserts an ineffective assistance of counsel claim
that attacks the validity of his guilty plea, the focus of the
inquiry is whether he entered a constitutionally valid guilty
plea.  Lambert v. Blodgett, 393 F.3d 943, 979-80 (9th Cir. 2004).
The petitioner in a habeas corpus action bears the burden of

13

establishing that his guilty plea is invalid.  Little v.
Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006).

In the context of an ineffective assistance of counsel
claim, a defendant's guilty plea may be invalid if it was based
upon advice from counsel that is not "within the range of
competence demanded of attorneys in criminal cases," and
prejudice arose as a result.  United States v. Delgado-Ramos, 635
F.3d 1237, 1239-40 (9th Cir. 2011) (quotations and citations
omitted) (per curiam).  The United States Supreme Court and the
Ninth Circuit Court of Appeals have recognized that criminal
defense attorneys have a constitutional duty to apprise their
non-citizen clients of the immigration consequences of a guilty
plea.  Padilla v. Kentucky, 559 U.S. 356, 368-69 (2010); United
States v. Sun Hwang,     Fed. Appx.    , No. 15-16334, 2016 WL
4137663, at *1 (9th Cir. Aug. 4, 2016).


**Petitioner's Attorney's Warning**

Attorney Rodriguez' sworn declaration, Petitioner's own
statements, and the plea agreement Petitioner signed establish
that Attorney Rodriguez informed Petitioner that he would be
subject to removal proceedings upon pleading guilty, and that
Petitioner nonetheless decided to enter a guilty plea.

Attorney Rodriguez attests that prior to pleading guilty,
Petitioner reviewed the case with him and concluded that the

14

Government had sufficient evidence for a jury to convict at trial.  Facing the prospect of a likely conviction, Petitioner made the strategic decision to plead guilty in the hope of receiving a lesser sentence. (Atty. Rodriguez Decl. at ¶ 6, ECF No. 146-4).  Attorney Rodriguez states that he specifically informed Petitioner that a guilty plea would result in his removal from the United States.  (Id. at ¶ 7).  Attorney Rodriguez states that it was after he explained the immigration consequences of pleading guilty that Petitioner decided to enter a guilty plea.  (Id.)

**The Magistrate Judge's Warning**

At the September 29, 2014 Change of Plea hearing, the Magistrate Judge conducted a detailed colloquy with Petitioner. (See generally Change of Plea Hearing Transcript, ECF No. 125). The Magistrate Judge questioned Petitioner as to whether he was induced by promises or threats in exchange for pleading guilty, (id. at p. 7).  Petitioner was also asked if he understood the terms of his plea agreement and its associated waiver of rights, (id. at pp. 9; 18), the consequences of pleading guilty, (id. at pp. 10-12), the nature of sentencing, (id. at pp. 10-13), the constitutional rights he would forfeit by pleading guilty, (id. at pp. 13-15; 17), and the government's burden of proof at trial, (id. at pp. 15-18).

The Magistrate Judge specifically cautioned Petitioner that

he may be subject to removal proceedings:

> THE COURT: In addition, because you are not a citizen of the United States a conviction in this case might have adverse consequences on your immigration status and may affect your right to remain in this country. Do you understand that?
>
> THE DEFENDANT: (Through interpreter) Yes.

(Id. at pp. 11-12).   After answering the Magistrate Judge's questions in the affirmative, Petitioner indicated his desire to plead guilty.   (Id. at p. 23).

**The Plea Agreement's Warning**

In addition to both Attorney Rodriguez and the Magistrate Judge's warnings concerning the immigration consequences of pleading guilty, the plea agreement cautioned Petitioner that the offenses to which he pled guilty would subject him to removal from the United States:

> d. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to conspiring to distribute 50 grams or more of methamphetamine, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.   Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

(PSR at pp. 3-4, ECF No. 72).   Petitioner told the Court while

under oath that he discussed the terms of his plea agreement with Attorney Rodriguez.  (Change of Plea Hearing Transcript at pp. 5-7).

The evidence presented before the Court and the record demonstrate that Attorney Rodriguez fulfilled his constitutional duty to inform Petitioner of the immigration consequences of pleading guilty.  Sun Hwang, 2016 WL 4137663, at *1.  Petitioner entered a valid guilty plea.  See Doe, 508 F.3d at 572 (rejecting habeas corpus attack on a guilty plea where the petitioner "participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and, specifically answered in the affirmative when asked if he had enough time to discuss the plea with his attorneys").

### 3. Petitioner Met with a Probation Officer to Assist in the Preparation of the Presentence Investigation Report

Petitioner claims Attorney Rodriguez precluded him from meeting with a probation officer during the preparation of the Presentence Investigation Report.

After Petitioner pled guilty as to Count 1 of the Indictment, the Probation Office began drafting a Presentence Investigation Report.  As part of the preparation of the Presentence Investigation Report, Petitioner was referred to the Probation Office for an interview.  (PSR at p. 4; ¶ 7, ECF No. 100).  On October 14, 2014, a probation officer interviewed

17

Petitioner at the Federal Detention Center in Honolulu. (<u>Id.</u> at p. 7; ¶ 23).  Local counsel Alan Okamoto was present with Petitioner.  (Atty. Rodriguez Decl. at p. 3; ¶ 8, ECF No. 146-4). The substance of Petitioner's interview is reflected in the Presentence Investigation Report.  (PSR at pp. 12-15, ECF No. 100).

The record establishes that Petitioner's allegation that Attorney Rodriguez prevented him from meeting with a probation officer is without merit.

**B. Petitioner's Claim Against Attorney Hironaka**

Petitioner appears to contend that Attorney Hironaka provided ineffective assistance at the sentencing phase of proceedings, as he allegedly failed to advocate for Petitioner to receive a below-mandatory-minimum sentence pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f).

The safety valve provision permits a court to sentence a defendant to a term of imprisonment that is lower than a statutory minimum sentence in limited circumstances. 18 U.S.C. § 3553(f); <u>see</u> <u>generally</u> <u>United States v. Shrestha</u>, 86 F.3d 935 (9th Cir. 1996) (summarizing the function of the safety valve provision).  A key requirement of the safety valve provision is that an eligible defendant must have no more than one criminal history point.  18 U.S.C. § 3553(f)(1).

The record establishes that Attorney Hironaka advocated for

18

Petitioner to receive a below-mandatory-minimum sentence pursuant to the safety valve.

Prior to Petitioner's sentencing, Attorney Hironaka met with Petitioner to discuss the case and sentencing strategy. (See generally Atty. Hironaka Decl., ECF No. 146-6). Attorney Hironaka reviewed the case and recognized that Petitioner committed the instant offense while wanted on an outstanding arrest warrant that stemmed from a prior conviction. (Id. at ¶¶ 12-13; PSR at pp. 10-11; ¶ 44). The applicable sentencing guidelines ascribe a two-point increase to Petitioner's criminal history, thereby disqualifying Petitioner from a lower sentence under the safety valve provision. U.S.S.G. § 4A1.1(d); 4A1.2 (2014).[1]

---

[1]The Probation Officer's response to Attorney Hironaka's objection, which was adopted by the Court, stated in part:

Response: Superior Court of California records reflect that the defendant was convicted of DUI on 4/12/2005, imposition of sentence was suspended, and the defendant was placed on 36 months summary probation, with special conditions, including $1457.00 in fines/fees/restitution. However, the defendant failed to appear for Proof of Completion hearings on 05/02/2006 and 05/09/2006, and his probation was revoked, due to his failure to pay the fines/fees/restitution. Consequently, a bench warrant in the amount of $26,000.00 was issued for his arrest and remains outstanding.

. . .

Further, the evidence establishes that the defendant committed the instant offense in 2013, while the DUI violation warrant issued on 05/09/2006 was outstanding.

Attorney Hironaka attests that he informed Petitioner of the situation and presented him with two options: (1) attempt to withdraw the guilty plea and proceed to trial, or (2) argue that Petitioner should qualify for relief under the safety valve provision.  (Atty. Hironaka Decl. at ¶¶ 14-16). Attorney Hironaka states that Petitioner deliberated and declined to seek a withdrawal of the guilty plea.  (Id. at ¶¶ 17-19).  Attorney Hironaka responded by informing Petitioner that he would advocate for a lower sentence pursuant to the safety valve provision. (Id. at ¶ 20).

On June 26, 2015, Attorney Hironaka filed an Amended Sentencing Statement, in which he argued that Petitioner qualified for a lower sentence under the safety valve provision. (ECF No. 92).  The Probation Office rejected Attorney Hironaka's position in an addendum to the Presentence Investigation Report, explaining that the circumstances of Petitioner's commission of the instant offense warranted a two-point increase in the

_____

USSG §4A1.1(d) provides for a two point increase if the defendant committed any part of the instant offense while under any criminal justice sentence.  This section defines "criminal justice sentence" as a sentence countable under USSG §4A1.2, having a custodial or supervisory component, although active supervision is not required.  This section further provides that, a defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding shall be deemed to be under a criminal justice sentence for purposes of applying USSG §4A1.2(d), if that sentence is otherwise countable.

calculation of his criminal history score pursuant to the sentencing guidelines.  (PSR at pp. 20-21).

On July 2, 2015, the Court held the final sentencing hearing as to Petitioner.  (ECF No. 93).  At the hearing, Attorney Hironaka advocated for Petitioner to receive a lower sentence pursuant to the safety valve provision.  (Sentencing Hearing Transcript at pp. 3-6, ECF No. 126).  The Court rejected Attorney Hironaka's argument and adopted the Probation Office's explanation, as stated in the addendum to the Presentence Investigation Report.  (Id. at p. 8).

Petitioner's claim that Attorney Hironaka failed to advocate for Petitioner to receive a below-mandatory-minimum sentence pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f) is without merit.

### C. Petitioner's Claims Against Attorney Wefald

Petitioner asserts that Attorney Wefald was unconstitutionally ineffective, as she allegedly (1) failed to confer with Petitioner and notify him before withdrawing as appellate counsel; and (2) refused to assist Petitioner's effort to appeal his conviction and sentence.

Ineffective assistance of appellate counsel claims are evaluated under the framework set forth in Strickland.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).  As applied to this case, the

21

<u>Strickland</u> framework requires Petitioner to first show that Attorney Wefald's performance was objectively unreasonable, which requires him to demonstrate that she acted unreasonably in failing to discover and brief a meritorious issue.  Should Petitioner succeed in demonstrating objectively unreasonable performance, he must then establish prejudice, which in this context means that but for Attorney Wefald's alleged errors, Petitioner would have prevailed in his appeal.  <u>Id.</u>

### 1. Attorney Wefald Provided Competent and Diligent Representation

#### a. Attorney Wefald Reasonably Consulted with Petitioner

Attorney Wefald submitted a sworn declaration concerning her representation of Petitioner.  (ECF No. 146-5).  Attorney Wefald states that on July 19, 2015, two days after she was appointed as appellate counsel for Petitioner, she wrote a letter to Petitioner.  In the letter, she stated:

> I have just been appointed to represent you in the above case on appeal.  Today I filed the notice of appeal, which is enclosed.  I spoke briefly to your previous attorney Randy Hironaka.  I understand you should be transferred soon, hopefully to Southern California.  In the meantime, please fill out the enclosed confidential client questionnaire and sign the authorization and return them to me in the enclosed envelope.  I am aware that you pled guilty and there was an appeal waiver.  However, I will review the entire record to determine what issues can be raised. Please tell me specifically why you wanted to appeal. I look forward to hearing from you soon.

(Atty. Wefald Decl. at ¶ 5a).

On August 7, 2015, Attorney Wefald sent Petitioner a copy of the transcript designation and order form.  She also informed Petitioner that he could communicate with her in Spanish if he preferred to do so, as she was conversant in that language.  (Id. at ¶ 5b).

Attorney Wefald attests that on August 14, 2015, she received a letter from Petitioner.  In the letter, which was written entirely in English, Petitioner complained that he did not see or sign a plea agreement, did not see his Presentence Investigation report, did not agree to the sentence the Court imposed, and did not understand his Miranda rights.  Petitioner also indicated that he had a poor command of English.  (Id. at ¶ 5c).

On August 18, 2015, Attorney Wefald responded to Petitioner's August 14, 2015 letter:

> Thank you for your letter which will help me to determine if there are any issues that can be raised in light of the plea agreement waiving your right to appeal if the sentence is greater than the guideline range.  Enclosed is the plea agreement which was filed with the court and bears your signature.  See page 8 for the waiver.  I cannot send you the PSR because it is under seal but you may request to review through your counselor.  Some of the issues you mention may have to be raised in a 2255 motion which would be filed after the appeal is concluded. Please don't file anything now. I will send you the transcripts when they are prepared and give you more advice at that time.

(Id. at ¶ 5d).  Petitioner did not reply to Attorney Wefald's August 18, 2015 letter.  (Id. at ¶ 5c).

23

Attorney Wefald attests that on October 2, 2015, Petitioner called her on the telephone.  Attorney Wefald indicates that she had a substantive discussion about Petitioner's case, and recalled that they spoke in English.  (Id. at ¶ 5e).

On October 9, 2015, Attorney Wefald wrote another letter to Petitioner.  In the letter, Attorney Wefald stated:

> Enclosed is the request for extension of time to file the Appellant's Opening Brief.  I also enclose the transcripts.  I have already sent you the plea agreement where you waived your right to appeal.  The two point reduction in the guidelines will not help you, unfortunately, because you were sentenced to the ten year mandatory minimum.  A lower guideline sentence will not permit the judge to go below that.  You were not eligible for the safety valve based on your prior California case.  I will do additional research and get back to you. Please let me know what specific questions you have.

(Id. at ¶ 5f).  Petitioner did not reply to Attorney Wefald's letter.  (Id. at ¶¶ 5c; 5e).

Attorney Wefald attests that after conducting her legal research, conferring with Petitioner, and reviewing the district court filings, the hearing transcripts, and the Presentence Investigation Report, she concluded that Petitioner had no non-frivolous issues to raise on appeal.  (Id. at ¶ 2).  Attorney Wefald then drafted a motion pursuant to Anders v. California, 386 U.S. 738 (1967), wherein she requested to withdraw as counsel, having been unable to discover any meritorious, non-frivolous issues on appeal.  (9th Cir. Dkt. No. 6-1).

On December 18, 2015, Attorney Wefald sent a letter to

24

Petitioner, in which she stated:

> Enclosed is the motion to withdraw as counsel pursuant
> to <u>Anders v. California</u>, 386 U.S. 738 (1967) and the
> supporting brief.  You waived your right to appeal any
> sentence that was not above the guidelines.  The
> guidelines in your case were 150-188 months and the
> judge sentenced you to 120 months, well below the
> guidelines.  I have thoroughly reviewed the entire
> record to determine if there were any issues that could
> be raised in spite of the appeal waiver.
> Unfortunately, I could not find any.
>
> The Ninth Circuit Court of Appeals will soon issue an
> order permitting you to file your own brief if you
> wish.  I realize this is not what you hoped for, but
> there was nothing I could do.  The 120 months sentence
> you received was the lowest possible sentence under the
> circumstances.  If you have any questions, please let
> me know.

(Atty. Wefald Decl. at ¶ 5g).  On the same date, December 18,

2015, Attorney Wefald filed the <u>Anders</u> motion to withdraw as

counsel.  (9th Cir. Dkt. No. 6-1).  Petitioner did not reply.

(Atty. Wefald Decl. at ¶ 5c).

On December 24, 2015, Attorney Wefald sent Petitioner a copy

of the of the Excerpts of Record that accompanied the <u>Anders</u>

motion she filed with the Ninth Circuit Court of Appeals. (<u>Id.</u> at

¶ 5h).

On January 29, 2016, the Ninth Circuit Court of Appeals

filed an order advising Petitioner that in light of Attorney

Wefald's filing of the <u>Anders</u> motion, Petitioner could file a *pro

se* supplemental opening brief raising any issues in his case.

(9th Cir. Dkt. No. 12).

On February 2, 2016, Attorney Wefald wrote to Petitioner,

stating:

> You should have received the enclosed order from the
> Ninth Circuit allowing you to file your own brief.  If
> you wish to do so and need more time you can request an
> extension of time.  I also received today the enclosed
> order denying your motion for reduction of sentence.
> The judge found that the guideline reduction had
> already been applied to your case.  Plus, you received
> the lowest sentence you could have received under the
> mandatory minimum, regardless of any guideline
> calculation.  Please let me know if you have any
> questions.  Hope all is well.

(Atty. Wefald Decl. at ¶ 5i).  Petitioner did not reply to

Attorney Wefald's letter, nor did he file a supplement opening

brief.  (Id. at ¶ 5c; 9th Cir. Order Affirming Conviction and

Sentence at p. 2, ECF No. 135).

On July 12, 2016, the Ninth Circuit Court of Appeals

affirmed Petitioner's conviction and sentence.  (ECF No. 135).

On the same date, Attorney Wefald wrote a letter to Petitioner,

in which she informed him of the appellate court's decision and

advised him of his ability and the deadline to file a habeas

corpus motion with the district court.  (Atty. Wefald Decl. at ¶

5j).

On July 13, 2016, Attorney Wefald wrote another letter to

Petitioner, in which she explained that she enclosed the trial

file and informed Petitioner that he could request his

Presentence Investigation Report from his counselor.  (Id. at ¶

5k).  Petitioner did not reply to Attorney Wefald's letter.  (Id.

at ¶ 6).

Attorney Wefald's sworn declaration establishes that she made a good-faith effort to confer with Petitioner throughout the course of her representation.  Attorney Wefald took care to discuss her impressions of the case and the attendant issues that posed significant roadblocks on appeal, such as the appeal waiver Petitioner signed as part of the plea agreement.  Attorney Wefald consistently communicated significant concerns she had as to the merits of Petitioner's appeal before filing the <u>Anders</u> motion. (<u>Id.</u> at ¶¶ 5d; 5e; 5f).  She invited Petitioner to reply in the various letters she sent to him, but he often failed to respond. <u>See</u> <u>Chavez v. Pulley</u>, 623 F.Supp. 672, 685 (E.D. Cal. 1985) (stating that "petitioner cannot complain of counsel's failure to communicate where his own refusal to see counsel is the cause of a lack of communication").

Even if Petitioner could demonstrate that Attorney Wefald should have more thoroughly consulted with him, he has not established prejudice.  <u>See</u> <u>Bowling v. Parker</u>, 344 F.3d 487, 506 (6th Cir. 2003) ("the mere fact that counsel spent little time with [the petitioner] is not enough under <u>Strickland</u>, without evidence of prejudice or other defects").  There is no indication that further discussions would have produced a different result on appeal.  <u>See</u> <u>United States v. Lucas</u>, 873 F.2d 1279, 1280 (9th Cir. 1989); <u>Hill v. Mitchell</u>, 400 F.3d 308, 324-25 (6th Cir. 2005).

### b. Attorney Wefald's Withdrawal from the Case was Neither Deficient nor Prejudicial

Petitioner faults Attorney Wefald for filing a motion to withdraw as appellate counsel pursuant to Anders, 386 U.S. 738. Petitioner appears to allege that Attorney Wefald's conduct constituted a refusal to assist with his appeal.

The Constitution provides appellate defense counsel with discretion to craft the scope of issues raised on appeal. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). Appellate counsel are not duty-bound to raise weak issues at the behest of the defendant. Bailey v. Newland, 263 F.3d 1022, 1028-29 (9th Cir. 2001) (citing Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989)).

In Anders, the Supreme Court addressed the extent to which court-appointed appellate counsel must pursue a criminal appeal, even after diligently determining that the appeal is of no merit. The Supreme Court held that if, after a conscientious examination of the case, appellate counsel finds the case to be wholly frivolous, she may advise the appellate court and request permission to withdraw. 386 U.S. at 744. The request to withdraw, however, must be supported by briefing that identifies any issues in the record that might arguably support an appeal. Id. In addition, the attorney must provide a copy of her brief to the defendant, so that he may raise his own arguments in

support of his appeal.  Id.  Once appellate counsel fulfills this burden, the appellate court, after a full examination of all proceedings, must then decide whether the appeal is wholly frivolous.  Id.

Attorney Wefald's acts of finding Petitioner's appeal to be frivolous and filing an Anders motion do not constitute ineffective assistance of counsel.  As the Supreme Court recognized, the framework set forth in the Anders decision "would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain."  Id.  Filing a motion to withdraw pursuant to Anders is not, by itself, a prejudicial act, as an Anders motion places a duty upon the appellate court to review the record for nonfrivolous issues and address those that arise.  See United States v. Davis, 508 F.3d 461, 464 (8th Cir. 2007) (citing Anders, 386 U.S. at 744); Jennison v. Goldsmith, 51 F.3d 280, *3 (9th Cir. 1995) (unpublished).

Attorney Wefald's Anders motion comprehensively discussed the facts of the case and explained why she believed Petitioner's appeal was frivolous.  (9h Cir. Dkt. No. 6-2).  Attorney Wefald provided a copy of her Anders motion to Petitioner, and apprised him of his ability to file a *pro se* supplemental brief.  (Atty. Wefald Decl. at ¶ 5g).  Petitioner did not submit a supplemental brief.

The Ninth Circuit Court of Appeals conducted an independent review of the record and concluded that there were "no arguable grounds for relief with respect to the conviction." (9th Cir. Order Affirming Conviction and Sentence at p. 2). Petitioner's appeal of his sentence was also dismissed, as there was "no arguable issue as to the validity" of the appeal waiver that was included in the plea agreement Petitioner signed. (Id.) The Ninth Circuit Court of Appeals granted Attorney Wefald's Anders Motion; her conduct in seeking to withdraw as counsel was objectively reasonable. See Barajas-Ocampo v. United States, No. CIV. 07-00522JMS-BMK, 2008 WL 563473, at *17 (D. Haw. Feb. 29, 2008).

## II.   PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING

An evidentiary hearing in a Section 2255 action is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  The underlying standard for an evidentiary hearing asks whether the prisoner "has made specific factual allegations that, if true, state a claim on which relief could be granted." United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

An evidentiary hearing is not required if a prisoner's allegations, "when viewed against the record, do not state a

claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003). Mere conclusory statements do not warrant an evidentiary hearing. Schaflander, 743 F.2d at 721. To the extent that a prisoner's allegations are contradicted by the record, the Court need not accept them as true. United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986).

No evidentiary hearing is required in this case. Petitioner's allegations are contrary to the record and therefore are not accepted as true. Id. Petitioner fails to state a claim for relief because his allegations conflict with governing law, the record, the transcripts, the memorandum of plea agreement, the declaration of his counsel, and the parties' filings. Petitioner is not entitled to an evidentiary hearing.

## III. PETITIONER IS NOT ENTITLED TO A CERTIFICATE OF APPEALABILITY

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. § 2253(c)(2). A "substantial" showing requires a prisoner to show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel,

529 U.S. 473, 483-84 (2000)(quoting Barefoot v. Estelle, 463 U.S. 880, 893, n. 4 (1983)).

Petitioner's 2255 Motion has not made a substantial showing that he was deprived of a constitutional right. Petitioner's arguments are not supported by the record and applicable law. Reasonable jurists would not debate the Court's conclusion, and there is no reason to encourage further proceedings.

Petitioner is not entitled to a Certificate of Appealability.

## CONCLUSION

Petitioner Ramon Bonilla-Galeas' Motion to Vacate, Set Aside or Correct Sentence, pursuant to Title 28 U.S.C. § 2255, (ECF No. 137), is **DENIED.**

Petitioner is not entitled to an evidentiary hearing.

Petitioner is not entitled to a certificate of appealability.

This case is now **CLOSED.**

IT IS SO ORDERED.

DATED: January 24, 2017, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Ramon Bonilla-Galeas v. United States of America; Cr. No. 13-00765-HG-2; Cv. No. 16-00440-HG-RLP; **ORDER DENYING PETITIONER RAMON BONILLA-GALEAS' MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. § 2255 (ECF No. 137)**

32